IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRAIG J. HARTIGAN,<br><br>    Plaintiff,<br><br>v.<br><br>UTAH TRANSIT AUTHORITY,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 1:12-CV-219 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Utah Transit Authority's ("UTA") Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

Plaintiff Craig J. Hartigan began working for Defendant UTA in December 2004. Plaintiff resigned shortly thereafter, but was rehired in April 2005 and continued to work for Defendant until his termination on June 27, 2008.

In early 2008, a waitress working at an eatery at Defendant's Mount Ogden Transit Center complained about Plaintiff. Around this same time, four of Plaintiff's female co-workers also complained of Plaintiff's conduct.[1] In general, these women complained that Plaintiff made inappropriate comments to them, asked them personal questions, touched or tried to touch them, followed them, or otherwise said and did things that made them uncomfortable. Plaintiff denies doing such things, but does not deny that Defendant was informed of these complaints.

---

[1] Some of these women came forward with their complaints on their own while others responded to inquiries from Defendant.

1

No disciplinary action was taken by Defendant after the first two complaints were made. However, at some point, Plaintiff's supervisor, Kenneth Rees, conducted an investigation into the other allegations and found that Plaintiff violated Defendant's harassment policy.[2] Plaintiff was informed that he could be terminated as a result of these violations, but was instead provided an opportunity to sign a Performance Agreement Letter.[3] Plaintiff was warned that should he violate that agreement, his employment would be terminated.[4]

On April 3, 2008, Plaintiff signed the Performance Agreement Letter. That letter placed the following conditions on Plaintiff's continued employment:

> 1. Stop all non work related conversations with female employees at UTA.
> 2. Stop asking questions of a personal nature to all female employees at UTA
> 3. Do not pick up or offer to drive any female employee of UTA in a non UTA vehicle.
> 4. Be honest in all dealings with UTA.
> 5. Keep all conversations involved in any investigation (Excluding your supervisor, union representative, or department manager) confidential.
> 6. Review and comply with UTA Employee Expectations and the Harassment Free Workplace SOP's.
> 7. Abide by all of UTA's Policies, Standard Operating Procedures and Expectations.[5]

Prior to the issuance of the Performance Agreement Letter, Plaintiff informed his supervisor and a union representative that he wanted to file a complaint against Mr. Rees for discrimination related to the investigation. On or about April 8, 2008, Plaintiff filed a complaint with Defendant's Civil Rights Compliance Office, alleging that he had been discriminated against with regard to the investigation. After a review of the investigative process, the Civil

---

[2] Docket No. 20 Ex. 10.

[3] *Id.*

[4] *Id.*

[5] *Id.*

Rights Compliance Office found no reason to believe that Plaintiff was treated unfairly and found against Plaintiff and his complaints.[6]

In June 2008, Defendant learned that Plaintiff had recorded certain meetings that occurred during UTA's investigation of the complaints lodged against Plaintiff. This was "not an acceptable practice of UTA" and was considered "an act of insubordination."[7] Plaintiff was advised "that this behavior is not acceptable and will not be tolerated in the future."[8] Plaintiff was informed that "[t]here will not be future incidents of you making tape recordings of any conversation concerning your actions with UTA employees and supervisors."[9]

In addition, on or around June 7, 2008, Plaintiff told a fellow employee, David Castle, that another employee, Joe Bowden, made certain statements to Plaintiff regarding Plaintiff's complaints and his intention to sue the union.[10] Plaintiff reported to Mr. Castle that Mr. Bowden said that the union was going to fire Plaintiff.[11] Mr. Bowden denied that he had any such conversation with Plaintiff.[12]

On June 24, 2008, Plaintiff had a discussion with another UTA employee, Samuel Martinez. Mr. Martinez reported that Plaintiff threatened him during this conversation.[13] Plaintiff denies making such a threat.

---

[6] Docket No. 17 Ex. I.
[7] Docket No. 20 Ex. 13.
[8] *Id.*
[9] *Id.*
[10] Docket No. 17 Ex. M.
[11] *Id.*
[12] *Id.* Ex. N.
[13] *Id.* Ex. O.

After the incident with Mr. Martinez, Operations Supervisor Lee Mortenson conducted an investigation and recommended that Plaintiff be terminated. The reasons stated for the termination were: (1) Plaintiff recording conversations during Defendant's investigation; (2) Plaintiff's allegedly dishonest statements to Mr. Castle concerning Mr. Bowden; and (3) the incident with Mr. Martinez.[14] Plaintiff was terminated on June 27, 2008.

Plaintiff filed a Charge of Discrimination on October 20, 2008, alleging gender discrimination and retaliation. After receiving a Notice of Right to Sue, Plaintiff brought this action on October 11, 2012.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[16] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[17]

## III. DISCUSSION

Plaintiff asserts two claims: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964; and (2) retaliation in violation of Title VII.

---

[14] *Id.* Ex. P; Docket No. 20 Exs. 15B, 28.

[15] Fed. R. Civ. P. 56(a).

[16] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[17] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

A.  DISCRIMINATION

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[18]  Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*,[19] "the plaintiff bears the initial burden of establishing a prima facie case of sex discrimination, whereupon the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge, and then back to the plaintiff to show that the stated reason is pretextual."[20]

"To establish a prima facie case, a plaintiff ordinarily must show 'that (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others (e.g., the position at issue remained open after the adverse employment action).'"[21]  In a reverse discrimination case, such as this, a plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."[22]  "Alternatively, a plaintiff may produce facts 'sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.'"[23]

---

[18] 42 U.S.C. § 2000e-2(a)(1).

[19] 411 U.S. 792, 802–04 (1973).

[20] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

[21] *Id.* (quoting *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004).

[22] *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992).

[23] *Argo*, 452 F.3d at 1201 (quoting *Notari*, 971 F.2d at 590).

In this case, Plaintiff has failed to present any evidence to show that Defendant "is one of those unusual employers who discriminates against the majority."[24] Indeed, Plaintiff admits that he has no such evidence. During his deposition, Plaintiff admitted that he did not hear of anyone at UTA discriminating against male employees and knew of no policy that was discriminatory toward male employees.[25]

Defendant focuses on this fact, arguing that Plaintiff cannot make out a prima facie case because of this lack of evidence. However, Defendant fails to address the alternative basis for proving reverse discrimination claims. Defendant relies heavily on *Held v. Ferrellgas, Inc.*,[26] but that case does not discuss this alternative basis.

The Tenth Circuit has held that "a plaintiff who presents direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff states a prima facie case of intentional discrimination under Title VII."[27] In such a situation, a plaintiff "is not entitled to rely on the presumption that is implicit in the *McDonnell Douglas* prima facie case analysis."[28] Rather, "the plaintiff must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred."[29] If Plaintiff can produce such evidence, "the district court should permit [Defendant] to articulate a nondiscriminatory justification for its [termination]

---

[24] *Notari*, 971 F.2d at 589.

[25] Docket No. 17 Ex. A, at 21:11–24:25.

[26] 505 F. App'x 687 (10th Cir. 2012) (unpublished).

[27] *Notari.* at 590.

[28] *Id.*

[29] *Id.*

decision, and then [Plaintiff] should have the chance to show that the articulated justification is pretextual."[30]

In this case, Plaintiff has failed to make a sufficient showing that, but for his gender, the challenged actions would not have occurred. Much of Plaintiff's argument focuses on the Performance Agreement Letter. Plaintiff argues that he has presented evidence of gender discrimination because Defendant chose to believe Plaintiff's accusers (all of whom were female) instead of him. There is no evidence, however, that Defendant disbelieved Plaintiff because he was male or that it tended to believe his accusers because they were female. Rather, it appears that Defendant chose to believe the women because they all made similar complaints against Plaintiff in a relatively short period of time, not because of their gender. Nor is there any indication that Defendant had Plaintiff sign the Performance Agreement Letter because he was male. Instead, the Performance Agreement Letter was created in response to the complaints lodged against Plaintiff and was designed to avoid similar issues in the future.

There is even less evidence that, but for Plaintiff's status as a man, he would not have been terminated. Plaintiff's termination resulted from: (1) Plaintiff recording conversations that occurred during Defendant's investigation; (2) Plaintiff's allegedly false statements about a conversation he had with a co-worker; and (3) Plaintiff's alleged threat to a co-worker. Unlike the complaints that led to the Performance Agreement Letter, none of those issues involved any female co-workers. None of the people who lodged the complaints against Plaintiff that ultimately resulted in his termination were female and none of the individuals involved with the decision to terminate Plaintiff were female. In short, there is simply no evidence that Plaintiff's

---

[30] *Id.*

7

gender played any role in Defendant's decision to terminate Plaintiff's employment. Therefore, Plaintiff has failed to set forth a prima facie case of discrimination.

Even assuming that Plaintiff could present a prima facie case, Defendant has presented legitimate, non-discriminatory reasons for the Performance Agreement Letter and Plaintiff's ultimate termination. As set forth above, Defendant received a number of complaints from Plaintiff's co-workers (both male and female), which resulted in the Performance Agreement Letter and Plaintiff's termination. Therefore, the burden shifts back to Plaintiff to show that these reasons are pretextual.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[31] "'In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision' not 'the plaintiff's subjective evaluation of the situation.'"[32] "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[33]

Plaintiff argues that he has demonstrated pretext because he disputes those allegations that led to the signing of the Performance Agreement Letter and his ultimate termination. While Plaintiff may dispute the complaints leveled against him, Defendant obviously chose to believe

---

[31] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks omitted).

[32] *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2001) (quoting *E.E.O.C. v. C.R. England*, 644 F.3d 1028, 1044 (10th Cir. 2011)).

[33] *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) (internal quotation marks omitted).

his accusers over Plaintiff.  This is the type of business judgment that the Court may not second guess.[34]  The Court's "role is to prevent intentional discriminatory [employment] practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."[35]

Plaintiff argues that the Court need not apply the business judgment rule in cases involving bad faith.  Plaintiff, however, has failed to provide any evidence that Defendant acted in bad faith.  All that Plaintiff has shown is that he disputes the various allegations levied against him.  As stated, the relevant inquiry is not Plaintiff's subjective evaluation of the situation, which is all that Plaintiff has provided.  Therefore, the Court finds that Plaintiff has failed to meet his burden to show that Defendant's preferred reasons for its employment actions were pretextual.

B.     RETALIATION

Plaintiff's retaliation claims is similarly subject to the *McDonnell Douglas* burden-shifting framework.  "To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[36]

The Court will assume, for the purposes of this Motion, that Plaintiff has shown a prima facie case of retaliation.  Defendant, in turn, has provided legitimate, non-retaliatory reasons for

---

[34] *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

[35] *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007) (citations omitted) (internal quotation marks omitted).

[36] *Argo*, 452 F.3d at 1202.

the Performance Agreement Letter and termination. Thus, the burden shifts to Plaintiff to demonstrate pretext.

Plaintiff argues that he can show pretext through the temporal proximity between the protected activity and the adverse action, and Defendant's false, inconsistent, or otherwise incredible explanations of its actions. The Court will discuss each in turn.

Plaintiff first argues that he can show pretext because of the close temporal proximity between his alleged protected activity and Defendant's adverse employment actions. "[C]lose temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment"[37] "To raise a fact issue of pretext, a plaintiff must present evidence of temporal proximity plus circumstantial evidence of retaliatory motive."[38] Because temporal proximity alone is not sufficient to survive summary judgment, the Court turns to Plaintiff's other argument concerning pretext.

Plaintiff argues that he can show pretext because he disputes those events that led to the Performance Agreement Letter and his termination. As discussed above, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[39] "Thus, the relevant 'falsity' inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue, or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for

---

[37] *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004)

[38] *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 989 (10th Cir. 2012).

[39] *Rivera*, 365 F.3d at 924–25 (internal quotation marks omitted).

discrimination."[40] As set forth above, Plaintiff has failed to present evidence that Defendant did not honestly believe that Plaintiff had done those things that resulted in the Performance Agreement Letter and his termination. Therefore, Plaintiff cannot survive summary judgment.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 17) is GRANTED.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff, and close this case forthwith.

The hearing set for June 19, 2014, is STRICKEN.

DATED this 27th day of May, 2014.

BY THE COURT:

Ted Stewart
United States District Judge

---

[40] *Young*, 468 F.3d at 1250.